UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOR AVILA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   24-1688 (RC) |
| | : | |
| v. | : | Re Document Nos.:   6, 15 |
| | : | |
| NATIONAL LABOR RELATIONS BOARD, | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff Victor Avila filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging that a union local engaged in unfair labor practices affecting him.  While the matter was pending before an NLRB administrative law judge, Avila filed this lawsuit, seeking declaratory judgment that NLRB members' statutory removal protections are unconstitutional.  Avila then moved for summary judgment on those grounds.  The NLRB opposes the motion for summary judgment and moves to dismiss, arguing that the Court lacks jurisdiction over Avila's claim, that the claim is not ripe, and that Avila does not show that the removal restrictions harmed him.  The Court concludes that it does have jurisdiction over Avila's claim, but that Avila nonetheless fails to plead facts demonstrating harm that entitles him to relief.

## II.  BACKGROUND

### A.  Statutory Background

Enacted in 1935, the National Labor Relations Act ("NLRA") "encourag[es] the practice and procedure of collective bargaining" between labor and management to resolve "industrial disputes arising out of differences as to wages, hours, or other working conditions."  NLRA, Pub. L. No. 74-198, 49 Stat. 449, 449 (1935) (codified at 29 U.S.C. § 151).  Congress passed the legislation "to eliminate the causes of certain substantial obstructions to the free flow of commerce" and to "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives . . . to negotiate terms and conditions of their employment." 49 Stat. at 449–450.  Section 7 of the NLRA protects many of these rights.  *See* 29 U.S.C. § 157.  Section 8 of the NLRA prohibits employers and unions from engaging in certain "unfair labor practice[s]," such as interfering with employees' rights under Section 7.  *See* 29 U.S.C. §§ 158(a), (b).

"To enforce the NLRA, Congress created the National Labor Relations Board."  *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 775 (2023).  The NLRB comprises five members, who are "appointed by the President by and with the advice and consent of the Senate" for a term of up to five years and "may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."  29 U.S.C. § 153(a).  The Board is generally "empowered . . . to prevent any person from engaging in any unfair labor practice . . . affecting commerce."  *Id.* § 160(a).  The Board may also appoint employees, such as regional directors and administrative law judges.  *Id.* § 154(a).  The NLRB is staffed with a General Counsel, who is "appointed by the President, by and with the advice and consent of the Senate, for a term of four years."  *Id*. § 153(d).  The General Counsel has "final

authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints . . . and in respect of the prosecution of such complaints before the Board." *Id.*

The NLRB's "authority kicks in when a person files a charge with the agency alleging that an unfair labor practice is afoot." *Glacier*, 598 U.S. at 775 (citing 29 C.F.R. § 101.2 (2021)). "Agency staff investigate the charge, and if it 'appears to have merit,'" the agency issues a complaint against the offending party." *Id.* (citing 29 C.F.R. §§ 101.4, 101.8). Hearings generally take place before a "duly designated administrative law judge." *See* 29 C.F.R. § 101.10. Following the administrative law judge's decision, the case is transferred to the Board and becomes final absent the parties' filing of exceptions to the decision. *See id.* §§ 101.11(b), 101.12(b). If a party does file exceptions, the Board will consider them and issue a decision and order which "may adopt, modify, or reject the findings and recommendations of the administrative law judge." *Id.* § 101.12(a). "A federal court of appeals may review the Board's final order, if an aggrieved party seeks judicial review or if the Board seeks enforcement of its order." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 343 (2024) (citing 29 U.S.C. §§ 160(e)–(f)).

### B.  Procedural Background

Avila filed an unfair labor charge with the NLRB on August 22, 2023, and filed amended charges on October 16 and November 27, 2023. *See* Compl. ¶ 13, ECF No. 1. Those charges allege that a labor organization violated the NLRA "by threatening employees with physical violence for not supporting the [u]nion." Ex. A to Compl., ECF No. 1-5. On February 9, 2024, the NLRB regional director issued a complaint and notice of hearing. *See* Compl. ¶ 14; Ex. B to Compl., ECF No. 1-5. On June 11, 2024, an NLRB administrative law judge held a hearing on the complaint. *See* Compl. ¶ 15.

Avila filed this lawsuit on June 11, 2024, the same day as the hearing before the administrative law judge. *See* Compl. The Complaint contains a single claim: that statutory limitations on the President's power to remove NLRB members violate Article II of the Constitution and the separation of powers. *See id.* ¶¶ 54–61. Avila moved for summary judgment on that claim on July 22, 2024. *See* Pl.'s Mot. Summ. J., ECF No. 6. On September 20, 2024, the NLRB opposed the motion and also moved to dismiss the Complaint, arguing that the Court lacks jurisdiction, that the issue is not prudentially ripe, and that Avila fails to allege that the Board members' removal protections cause him actual harm.[1] *See* Def.'s Combined Mot. Dismiss and Opp'n to Mot. Summ. J. ("Def.'s Mot."), ECF No. 15.

### III. LEGAL STANDARDS

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. On summary judgment, the Court views all evidence "in the light most favorable to the nonmoving party and . . . must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

---

[1] The NLRB initially argued that Avila failed to state a separation-of-powers claim. *See* Def.'s Mot. at 25–40. On March 6, 2025, the NLRB notified the Court that it had changed its position, and that "[t]he NLRB is no longer relying on its previous argument that the statutory tenure protections for Board members are constitutional." Def.'s Notice of Modified Position at 1, ECF No. 28. "The NLRB maintains its positions with respect to its remaining arguments," including those related to the Court's jurisdiction and Avila's showing of harm. *Id.*

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citing Fed. R. Civ. P. 12(b)(6)). In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). But a court may disregard "inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (cleaned up) (quoting *Kowal*, 16 F.3d at 1276).

Thus, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 555). Similarly, there is no obligation to accept a plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Twombly*, 550 U.S. at 555. The Court may consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

## IV.  ANALYSIS

Although the NLRB argues that D.C. Circuit precedent precludes the Court's exercise of jurisdiction, the Supreme Court's recent decision in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), supports that jurisdiction here. Avila's claim nonetheless fails on the merits because he does not plausibly plead that the NLRB's removal protections caused him actual harm for which this Court may provide relief under *Collins v. Yellen*, 594 U.S. 220 (2021). As a result, the Complaint must be dismissed for failure to state a claim.

### A.  Jurisdiction

Avila's Complaint collaterally attacks the NLRB's structure while his case proceeds through the administrative process. *See generally* Compl. The NLRB argues that Congress sought to funnel Avila's claim through the NLRB initially, with judicial review available

following the NLRB's final decision.  See Def.'s Mot. at 9–13.  Specifically, the NLRB argues that the D.C. Circuit held in *Jarkesy v. Securities & Exchange Commission*, 803 F.3d 9 (D.C. Cir. 2015), that the agency has exclusive jurisdiction over the controversy—including certain constitutional challenges—in the first instance.  See Def.'s Mot. at 9.  The NLRB argues that although the Supreme Court held in *Axon* that challenges to an agency's structure may be brought in federal court at the outset, the Court's decision applies only to parties brought before an agency, and not a party like Avila who voluntarily availed himself of the agency's jurisdiction.  *See id.* at 11.  Avila responds that *Axon* represents on-point precedent and supports the Court's jurisdiction over the collateral attack here.  See Pl.'s Opp'n Mot. Dismiss and Reply in Supp. Mot. Summ. J. ("Pl.'s Opp'n") at 1–3, ECF No. 22.  The Court must address these "jurisdictional concerns before turning to a merits question," *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018), and agrees with Avila that it may exercise jurisdiction over this dispute regarding the NLRB's structure.

"A special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon*, 598 U.S. at 185.  Although a district court usually has jurisdiction over those controversies under 28 U.S.C. § 1331, Congress "may substitute for that district court authority an alternative scheme of review" either explicitly or implicitly.  *Id.*  The Supreme Court has held that the creation of a scheme that allows for "review in a court of appeals following [an] agency's own review process . . . divests district courts of their ordinary jurisdiction over the covered cases." *Id.*; *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (observing that when Congress intends an agency to bring its "'expertise . . . to bear on particular problems,' those procedures 'are to be

exclusive.'" (quoting *Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965)).

In *Jarkesy*, the Securities and Exchange Commission ("SEC") brought charges against the plaintiff, who then challenged the proceedings under the Fifth Amendment Due Process Clause, the Equal Protection Clause, and the Administrative Procedure Act. *See Jarkesy*, 803 F.3d at 12, 14. Securities laws provide that the Commission's final orders may be appealed to the relevant United States Court of Appeals, *see id.* at 13, and the *Jarkesy* court considered whether Congress intended this to represent the plaintiff's sole avenue for relief, *see id.* at 16–17. The court concluded that Congress sought "to preclude suits by respondents in SEC administrative proceedings in the mine-run of cases." *Id.* at 16. The court looked to Supreme Court precedent in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), which held that Congress included a "detailed structure for reviewing violations" in the Federal Mine Safety and Health Amendments Act of 1977, barring a district court from exercising subject matter jurisdiction over a pre-enforcement challenge to the Act. *Id.* (quoting *Thunder Basin*, 510 U.S. at 207). So too did the Securities Exchange Act of 1934 set forth "rules governing the court of appeals' review of Commission action" in "painstaking detail." *Id.* at 17. This meant that Congress intended the plaintiff's challenge to flow through SEC proceedings. *Id.* at 17. The Court additionally concluded that preclusion of district court jurisdiction would not bar meaningful judicial review of the plaintiff's claims, *see id.* at 22, that his challenge to the SEC's procedures was not "'wholly collateral' to the securities laws' scheme," *id.* at 22, and that the SEC had expertise that it could bring to bear on the constitutional issues he raised, *see id.* at 28–30. The D.C. Circuit therefore held that district court did not have jurisdiction over the dispute,

and the plaintiff was required to bring his challenge to the SEC before resorting to the relevant court of appeals.  *Id.* at 30.

In *Free Enterprise Fund*, in contrast, an accounting firm subject to a Public Company Accounting Oversight Board ("PCAOB") investigation sued, contending that the Board members' for-cause removal protections were unconstitutional because the members could be hired and fired only by the SEC, which also enjoyed for-cause removal protections.  *See Free Enter. Fund*, 561 U.S. at 487–89.  The Supreme Court also consulted *Thunder Basin* to determine whether the accounting firm's challenge must proceed through the PCAOB to the court of appeals.  Courts "presume that Congress does not intend to limit jurisdiction [1] if 'a finding of preclusion could foreclose all meaningful judicial review'; [2] if the suit is 'wholly collateral to a statute's review provisions'; and [3] if the claims are 'outside the agency's expertise.'"  *Id.* at 489 (quoting *Thunder Basin*, 510 U.S. at 212–13).  First, the Supreme Court observed that meaningful review of the accounting firm's claims could be barred because only the SEC's final orders were subject to review, meaning that "not every [PCAOB] action is encapsulated in a final Commission order or rule."  *Id.* at 490.  Second, the accounting firm's "general challenge to the Board is 'collateral' to any Commission orders or rules from which review might be sought."  *Id.*  Third, the firm's "constitutional claims" were "outside the [SEC's] competence and expertise," as they were "instead standard questions of administrative law, which the courts are at no disadvantage in answering."  *Id.* at 491.  The Supreme Court thus held that the district court had jurisdiction in the first instance over the challenge to the PCAOB's structure.

The Supreme Court followed the same basic script when considering a similar issue in *Axon*.  There, the plaintiffs challenged SEC and Federal Trade Commission ("FTC")

administrative law judges' tenure protections and the combination of prosecutorial and adjudicative functions within the FTC. *Axon*, 598 U.S. at 183. The Court observed that "[m]ost objections to" SEC and FTC "proceedings follow a well-trod path" through the relevant commission and then a federal court of appeals, but that the Court needed to resolve whether a district court had jurisdiction to address "the parties' constitutional challenges to the Commissions' structure." *Axon*, 598 U.S. at 180. The Court considered the same three *Thunder Basin* factors as it did in *Free Enterprise Fund*. *See id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 208, 212–13). The plaintiffs claimed subjection to "an illegitimate proceeding, led by an illegitimate decisionmaker," and the Court concluded deferring review until afterwards would be insufficient to remedy that harm. *Id.* at 191. The challenge to the Commissions had "nothing to do with the enforcement-related matters the Commissions 'regularly adjudicate[],'" meaning that it was collateral to review of any agency orders or rules. *Id.* at 193. Finally, the plaintiffs' claims were outside of the Commissions' expertise: "Claims that tenure protections violate Article II . . . raise 'standard questions of administrative' and constitutional law, detached from 'considerations of agency policy.'" *Id.* at 194 (quoting *Free Enter. Fund*, 561 U.S. at 491). Again, the Supreme Court held that "[a]ll three *Thunder Basin* factors" thus supported the district court's jurisdiction over whether "the structure, or even existence, of an agency violates the Constitution." *Id.* at 195.

 The key question here is whether Avila's challenge is more like the process-based challenge in *Jarkesy*, or rather more akin to the structural issues raised in *Free Enterprise Fund* and *Axon*. This case plainly falls in league with the latter set of cases. Avila, like the plaintiffs in *Free Enterprise* and *Axon*, asserts that NLRB members' for-cause removal protections violate the Constitution, such that he is subjected to "an illegitimate proceeding, led by an illegitimate

decisionmaker." *Axon*, 598 U.S. at 191; *see also* Compl. ¶¶ 54–61.  Unlike the plaintiff in *Jarkesy*, he does not allege that the agency's procedures for hearing his claim offend due process or equal protection of the law.  *See Jarkesy*, 803 F.3d at 14.  Similar to the plaintiff in *Axon*, Avila's "subjection to an unconstitutionally structured decisionmaking process" produces an injury for which judicial review before a Circuit Court after the case before the NLRB is complete "would come too late to be meaningful." *Axon*, 598 U.S. at 191–92.  Avila's "challeng[e to] the [agency's] power to proceed at all, rather than actions taken in the agency proceedings" similarly renders his grievance collateral in nature.  *Id.* at 192; *see also Free Enter. Fund*, 561 U.S. at 490–91 (finding challenge to PCAOB members' removal protections to be collateral).  Finally, his claims regarding Article II of the Constitution and separation of powers lie "outside the [NLRB's] expertise."  *Axon*, 598 U.S. at 194.  They are "standard questions of administrative law" that a federal court is well placed to answer without relying on the NLRB's unique knowledge regarding labor relations and agency proceedings.  *Free Enter. Fund*, 561 U.S. at 491.  Under *Free Enterprise Fund* and *Axon*, therefore, this Court has jurisdiction to hear Avila's claim that the NLRB's for-cause removal protections violate the separation of powers.[2]

The NLRB argues that the NLRA generally requires a plaintiff to bring a claim to the agency in the first instance, with post-hoc review in the courts of appeals.  *See* Def.'s Mot. at 9.  Although *Axon* upset this default rule "to permit plaintiffs who are *respondents* in agency-enforcement actions to challenge the agency's structure in district court," the agency argues, the

---

[2] To be sure, the D.C. Circuit did address the *Jarkesy* plaintiff's argument that the Dodd-Frank Act, and therefore the PCAOB, violated the non-delegation doctrine.  *See Jarkesy*, 803 F.3d at 19.  Yet the challenge here—the constitutionality of for-cause removal protections for the heads of multimember agencies—is much more similar to those in *Free Enterprise Fund* and *Axon* than it is to the non-delegation challenge in *Jarkesy*.

11

reasoning does not apply "either expressly or logically" to plaintiffs who "initiated the enforcement action" themselves. *Id.* at 9–10; *see also Jolley v. United States*, No. 21-5181, 2024 WL 1521633, at *4 (D.C. Cir. Apr. 9, 2024) (declining to "address whether *Axon*'s holding is limited to enforcement actions or whether petitioners bringing affirmative claims may bypass an administrative review scheme"). The NLRB fails to show that charging parties do not experience the same issues the Supreme Court raised in *Axon*. It is well settled that "the NLRB's jurisdiction is in general exclusive; that is, if a claim falls within the purview of the NLRB, state and federal courts are preempted from hearing it." *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834, 839 (D.C. Cir. 2016) (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)) (explaining that "[t]his rule is referred to as '*Garmon* preemption'"). This means that the NLRB is the only game in town for Avila—he cannot bring his labor complaint in another forum and must proceed, if at all, through the NLRB. The Supreme Court has counseled that a plaintiff has just as strong an interest—oftentimes a constitutionally protected property interest—in pursuit of his claims as a defendant does in opposing them. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982). The Court finds no authority for the notion that a plaintiff has a diminished interest in constitutionally sound proceedings simply because he could have declined to seek a remedy for his injury, and the NLRB cites none.

    The NLRB asserts that *Commodity Futures Trading Commission v. Schor* supports its position. *See* Def.'s Reply at 6, ECF No. 27 (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 837, 855 (1986)). There, the Supreme Court approved of the Commodity Futures Trading Commission's ("CFTC") resolution of a party's state law counterclaim, a task generally more appropriate for an Article III court. *See Schor*, 478 U.S. at 850–57. The

Supreme Court reasoned that "separation of powers concerns [were] diminished" because "the decision to invoke [the CFTC as a] forum is left entirely to the parties." *Id.* at 855. Yet the Court's reasoning undermines the NLRB's position here; the Court reached its conclusion solely because the parties could have litigated their dispute in an Article III court. The parties voluntarily dismissed a federal court action to place their claims before the CFTC, *see id.* at 838, and the Court observed that "the power of the federal judiciary to take jurisdiction of these matters is unaffected," *id.* at 855. *Schor* instead stands for the notion that parties may choose to submit a dispute to a federal agency for "arbitration." *Id.* at 855. That holding rested on the fact that the parties could have also brought their dispute to federal court—and a federal court is forbidden from hearing Avila's labor complaint here in the first instance. This means that, unlike the parties in *Schor*, Avila is not merely consenting to arbitration and does have an interest in the constitutionality of the NLRB's powers.[3]

The Supreme Court's reasoning in *Axon* also does not appear to depend on the party's status as respondent or petitioner. The collateral nature of the party's attack and the agency's capacity to entertain it are both plainly agnostic to that party's identity. *See Axon*, 598 U.S. at 192–96. The NLRB argues, however, that judicial review at a later stage can address Avila's concerns because he "has not been dragged into an unfair-labor-practice [dispute] against his will." Def.'s Mot. at 12. But the NLRB cannot debate that Avila has a statutory right to pursue his claim.

---

[3] The NLRB's invocation of *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1159 (Fed. Cir. 2020), is unavailing for the same reason. *See* Def.'s Reply at 6. The appellant there "asked the [Patent Trial and Appeal] Board to address its challenge" but also had "a valid alternative forum" in district court. *Ciena Corp.*, 958 F.3d at 1161. Nor does the single district court case support the NLRB's legal position—the court there simply described the Supreme Court's reasoning in *Axon*, where the party alleged that he was "subjected to an adjudicatory process." Def.'s Reply at 6 (citing *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 678 F. Supp. 3d 88 (D.D.C. 2023)). Avila can also be subjected to a flawed adjudicatory process even if he is the party bringing the claim.

And in doing so he can "protest the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process." *Axon*, 598 U.S. at 192.  The NLRB seizes on the Supreme Court's comparison to "established immunity doctrines" under which it has "identified certain rights 'not to stand trial' or face other legal processes." *Id.*; *see also* Def.'s Mot. at 11–12.  The NLRB then reasons that because immunity may be waived, so too may a party waive his right to challenge an agency's structure by voluntarily brining a claim before it.  *See* Def.'s Mot. at 11–12.  Yet the Court raised the concept of immunity in *Axon* to demonstrate that proceedings before an agency or court may themselves cause harm, not for the proposition that immunity may be waived.  *Axon*, 598 U.S. at 192.

Finally, the NLRB argues that *Jarkesy* remains good law, and that the decision binds this Court.  *See* Def.'s Mot. at 9–10; Def.'s Reply at 2–4.  To the extent that *Axon* and *Jarkesy* might be found to conflict, it is not this Court's role to resolve the discord.  This Court is "obligated to follow controlling [C]ircuit precedent" until the Circuit or the Supreme Court overrules it.  *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997).  The key word in that rule, however, is "controlling."  The plaintiff in *Jarkesy* did not claim that SEC officials enjoyed unconstitutional removal protections, and the Circuit there did not consider whether a district court might have jurisdiction over that particular controversy.  The Supreme Court in *Axon* and *Free Enterprise Fund* did consider that exact question, and in both cases ruled that a district court could hear it.  *See Axon*, 598 U.S. at 195–96; *Free Enter. Fund*, 561 U.S. at 489–92.  Those decisions are on point and controlling here.  The Court therefore finds that it has jurisdiction over Avila's separation-of-powers claim, and that he need not bring it to the NLRB in the first instance.

## B. Merits

Although Avila carries his burden to show that the Court has jurisdiction over his claims, they nonetheless fail on the merits. He moves for summary judgment on the basis that the NLRB's for-cause removal protections are unconstitutional, *see* Pl.'s Mot. at 6–21, and that he is entitled to declaratory judgment, *see id.* at 21–29. The NLRB moves to dismiss and opposes summary judgment on the grounds that Avila fails to show actual harm as required by *Collins*, Def.'s Mot. at 17–25. The Court concludes that Avila fails to plead facts that he suffered harm from any removal protections, and therefore does not opine on the constitutionality of those limitations.

In *Collins*, the Supreme Court held that the Housing and Economic Recovery Act's for-cause removal restriction for the single director of the Federal Housing Finance Agency violated the constitutional separation of powers. *See Collins*, 594 U.S. at 250–56 (2021). The Court then addressed the plaintiffs' right to relief flowing from this legal conclusion. *See id.* at 257–60. The Court explained that the mere existence of unconstitutional removal protections does not void officials' actions, where those officials were "properly *appointed*" in the first place. *Id.* at 257–58. "[T]he unlawfulness of the removal provision does not strip the [official] of the power to undertake the other responsibilities of his office." *Id.* at 259 n.23 (citing *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 232–38 (2020)). Rather, the plaintiff must show that he suffered some harm due to the unconstitutional provision, and that the agency "lacked the authority to carry out [its] functions." *Id.* at 258. This might include evidence that "the President had attempted to remove" the official or expressed that he would do so if he believed he could. *Id.* at 259–60.

Courts in this Circuit and elsewhere have interpreted this section of *Collins* to articulate a requirement for plaintiffs to prevail on the merits of their separation-of-powers claims. *See Cortes v. Nat'l Lab. Rels. Bd.*, No. 23-cv-2954, 2024 WL 1555877, at *5 (D.D.C. Apr. 10, 2024); *see also id.* at *3–4 (explaining how the harm requirement differs from Article III standing analysis); *Consumer Fin. Prot. Bureau v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 179 (2d Cir. 2023); *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 613–16 (3d Cir. 2024), *cert. denied*, No. 24-185, 2024 WL 5112295 (U.S. Dec. 16, 2024); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 632–33 (5th Cir. 2022) ("[A]fter *Collins*, a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm."), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *reinstating opinion in relevant part*, 104 F.4th 930 (5th Cir. 2024); *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 313–17 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023); *YAPP USA Auto. Sys., Inc. v. Nat'l Lab. Rels. Bd.*, No. 24-1754, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024) (citing *Calcutt* as controlling precedent); *Bhatti v. Fed. Hous. Fin. Agency*, 97 F.4th 556, 559 (8th Cir. 2024); *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 742 (9th Cir. 2022); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 757 (10th Cir. 2024), *cert. denied*, No. 24-156, 2025 WL 76435 (U.S. Jan. 13, 2025); *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1305 (Fed. Cir. 2022). The actual harm requirement is an "element that plaintiffs must show to make out their constitutional claim." *Cortes*, 2024 WL 1555877, at *5 (citing *Collins v. U.S. Dep't of Treasury*, 83 F.4th 970, 981 (5th Cir. 2023)). Courts have thus concluded that a plaintiff must demonstrate an official lacked the authority to

make a decision in order to obtain either "retrospective or prospective relief" of any kind. *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 631 (quoting *Calcutt*, 37 F.4th at 316); *see also Cortes*, 2024 WL 1555877, at *5; *Leachco*, 103 F.4th at 756–57 ("*Collins*' relief analysis applies to both retrospective and prospective relief."); *Crystal Moroney, P.C.*, 63 F.4th at 180–81.

Avila challenges this broad consensus on several grounds. He argues, for instance, that *Collins* does not bar declaratory relief in separation-of-powers challenges. *See* Pl.'s Mot. at 24–29; Pl.'s Opp'n at 13–17. "As every court of appeals that has dealt with this claim has recognized, however, the Court's reasoning in *Collins* 'applies with equal force regardless of the relief sought.'" *Cortes*, 2024 WL 1555877, at *6 (quoting *Moroney*, 63 F.4th at 180–81). "The *Collins* inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy." *Calcutt*, 37 F.4th at 316.

Avila additionally suggests that two decisions from the Fifth Circuit have come to a different outcome. *See* Pl.'s Mot. at 27–28 (discussing *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342 (5th Cir. 2024) and *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc)). Avila claims that the panel's conclusion in the first case "directly conflicts with any claim that *Collins* applies no matter the remedy sought." Pl.'s Mot. at 27. The issue was not actually litigated there, however, as the CPSC did not raise the actual harm requirement on the merits. *See Consumers' Rsch.*, 91 F.4th at 351; *see also* Brief for Appellant, *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342 (5th Cir. 2024) (No. 22-40328). The second cited opinion dealt with a district court's jurisdiction over the case under *Thunder Basin*, and not consideration of the merits under *Collins*. *See Cochran*, 20 F.4th at 206–12. Avila additionally declines to explain how the Fifth Circuit could hold such plainly contradictory positions in light of *Community Financial Service Association*, which directly contradicts his position. *See* 51

17

F.4th at 632–33; *see also Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (explaining that the Fifth Circuit's "rule of orderliness" prohibits a panel from overturning another panel's decision absent intervening change of law from Congress, Supreme Court, or *en banc* court). The cases also supply no reasoning that might actually support Avila's position.[4]

Courts disagree about precisely what showing a party must make to meet the *Collins* harm requirement. *See Crystal Moroney, P.C.*, 63 F.4th at 179–80. Yet Avila makes no showing whatsoever. He pleads no facts in his Complaint showing harm, *see* Compl. ¶¶ 12–15, and makes no argument in his briefing that he has met his burden, *see generally* Pl.'s Mot.; Pl.'s Opp'n. He does not allege, for instance, that the President has been unlawfully restrained from removing members of the NLRB.[5] *See Collins*, 594 U.S. at 259–60. He therefore concedes that if *Collins* applies to his pursuit of declaratory relief, he fails to state a claim. *See* Def.'s Reply at

---

[4] Avila cites some district court opinions relying on *Cochran* to conclude that plaintiffs may seek prospective relief without establishing that they will experience harm. *See* Pl.'s Opp'n at 14–15 (citing *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, 742 F. Supp. 3d 755, 760 (S.D. Tex. 2024)); *see also Seton v. Nat'l Lab. Rels. Bd.*, No. 1-24-cv-01176-ADA, 2024 WL 4678057, at *2 (W.D. Tex. Oct. 18, 2024). These cases misread *Cochran* and ignore both *Community Financial Service Association* and *Collins*. As stated above, the relevant portion of *Cochran* concerned whether a district court had initial jurisdiction under *Thunder Basin*, or whether the plaintiff must proceed through the agency's processes first. *Cochran*, 20 F.4th at 206–12. In a footnote, the *Cochran* court explained that meaningful judicial review could not be had following the agency's proceedings, such that the plaintiff's "injury [was] sufficiently serious to justify pre-enforcement review in federal court" under *Thunder Basin*, and *Collins* did not impact that conclusion. *Id.* at 210 n.16. The district courts interpreted this jurisdictional analysis to translate over to the merits, which contravened both *Community Financial Service Association*, *see* 51 F.4th 632–33, and the *Collins* requirement that a plaintiff demonstrate the relevant official "lack[s] the authority to carry out the functions of [his] office." 594 U.S. at 258.

[5] It is possible that factual circumstances have changed since Avila filed his Complaint, either regarding the status of his labor case or the composition of the Board. At the motion to dismiss stage, however, the Court's review is limited to the facts contained in the operative complaint and any documents of which the Court may take judicial notice. *See Iqbal*, 556 U.S. at 678. Avila has not sought to supplement his Complaint under Federal Rule of Civil Procedure 15, and neither party asks the Court to take judicial notice of subsequent information.

13. For this reason, the Court must grant the NLRB's motion to dismiss.[6] Because the Court grants the motion to dismiss for failure to state a claim, it must accordingly deny Avila's motion for summary judgment.

## V.  CONCLUSION

For the foregoing reasons, the NLRB's Motion to Dismiss is **GRANTED**, and Avila's Motion for Summary Judgment is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 19, 2025                                                                  RUDOLPH CONTRERAS
                                                                                                          United States District Judge

---

[6] The NLRB argues that Avila's claim is not ripe because, under the facts as pled, his claim has not yet reached the NLRB, which has not yet exercised its authority and may never do so unless a party states objections to the administrative law judge's decision.  *See* Def.'s Mot. at 13–16.  Because the Court bases its decision on the insufficiency of facts pled in the Complaint demonstrating that Avila suffered harm under *Collins*, the Court does not see a need to await further developments.